IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| QUARTUS STITT,<br>    Plaintiff,<br><br>v.<br><br>CITY OF DECATUR; DECATUR POLICE,<br>DEPARTMENT; OFFICER DOES 1 through 10,<br>In their official capacity as police officers of the<br>Decatur Police Department, inclusive; DOES,<br>1 through 10, inclusive.<br>    Defendants. | No. 2:22-cv-02138 |

Declaration of Karl W. Macomb

1. At all times relevant I was a Decatur police officer, Badge # 1218

2. On June 26 2020 at 16:52 hours, I responded to a detail over the radio in reference to a white passenger vehicle with out-of-state plates, possibly South Carolina, with a black male driver reportedly possessing a firearm in the vehicle in the area of N Charles St. and E Hickory St. City of Decatur IL arising from an alleged victim report of unlawful use of a weapon.

3. Within seconds, Officer Kirstin Davis, city of Decatur Police Department, advised on radio that she observed the suspect vehicle, a white Mazda, traveling N on N Lowber St. as it approached E Walnut St.

4. Within seconds, I observed a white passenger vehicle traveling N on N Lowber St. at the location Davis reported as it stopped at the stop sign for E Walnut St. The vehicle was being driven by a black male and I did not observe any other occupants.

5. I pulled behind the suspect white passenger car and observed that the vehicle had an out-of-state plate from the state of Florida. As I pulled in behind the vehicle the vehicle was pulling into the north alley and stopped immediately.

6. I then activated my overhead lights and commenced a traffic stop for investigatory purposes on the vehicle and radioed for backup with the possibility that a firearm may be in the vehicle based on the detail to which I was responding. As I approached the white passenger car, I observed it to be a Mitsubishi. As I exited my patrol vehicle, I observed a black male standing between my patrol vehicle and the suspect vehicle. I ordered the black male to move out of the way with a loud voice at which time he complied.

7. I next unholstered my sidearm and yelled at the black male driver in the white passenger vehicle to show me his hands at which time the driver pointed his empty hands and arms out of the driver window. I radioed to dispatch that I had the driver at gunpoint. I maintained visual contact with the driver until my backup, Officer Davis arrived, nearly immediately.

8. With Officer Davis as backup, I then advised the driver to open the driver door and exit the vehicle facing away from me with his hands up. The driver complied with no issues. I next ordered the driver to step back to the sound of my voice with his hands up. The driver stepped back in compliance with my order until he was closer to Officer Davis.

9. Once the driver had stopped in between our squad cars, I provided cover as I observed Officer Davis pat the driver down and then secure the driver in handcuffs. Officer Davis was patting the driver down professionally.

10. After Officer Davis secured the driver, I cleared the vehicle, observing no passengers or weapons within plain view.

11. Officer Davis next identified the driver as Quarttous Stitt, date of birth April 7 1996, out of Florida by either examination of his license, radio communication or a combination thereof.

12. Officer Davis confirmed with dispatch over the radio that Stitt was not the suspect. Stitt was removed from the handcuffs and released. Shortly thereafter the scene was cleared.

13. The duration of the detention of the driver, Stitt, was approximately 2 minutes or less.

14. Attached as Exhibit A to this Declaration is a map of the location of various points of interest relevant to this declaration, more particularly as follows:

(a). The area indicated as POINT 1 is the location of the reported unlawful use of weapons occurring at or about 1360 E Hickory Street Decatur Illinois.

(b). The area indicated as POINT 2 is the location where officer Davis reported on radio observing the suspect white Mazda on Lowber St. Northbound travelling towards Walnut St. The observation was reported at or immediately before 1652 hours.

(c). The area indicated as POINT 3 is the stop sign at Lowber and Walnut where I first observed the white passenger vehicle at approximately 16:52.

(d). The area indicated as POINT 4 is the location where I stopped the suspect vehicle after it had pulled into a private alley.

15. The radio communications I could hear originated with dispatch to the Decatur Police Department. I am not in audience to the communications originating with the alleged victim to dispatch. I had no basis to know the understanding of the reporting victim to dispatch to distinguish the make of similar vehicles or the certainty of her recognition of out-of-state plates. I

observed a white passenger vehicle with a black male driver in the reported area at the reported time reportedly in possession of a firearm potentially presenting a risk to the safety of the public and police officers.

16.   Filed as Audio Exhibits A and B are the recordings from my in-vehicle camera and Audio Exhibit C recording communications between dispatch and Decatur Police Department units which represent true and accurate recording of the events referenced in paragraphs 1-13, inclusive, above.

Pursuant to 28 U.S.C. Section 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed this 21st day of February 2024.

/s/ Karl W. Macomb

Karl W. Macomb

