IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | | |
|---|---|---|
| QUARTUS STITT, | ) | |
| Plaintiff, | ) | |
| | ) | No. 2:22-cv-02138 |
| v. | ) | |
| | ) | |
| CITY OF DECATUR; DECATUR POLICE, | ) | |
| DEPARTMENT; OFFICER DOES 1 through 10, | ) | |
| In their official capacity as police officers of the | ) | |
| Decatur Police Department, inclusive; DOES, | ) | |
| 1 through 10, inclusive. | ) | |
| Defendants. | ) | |

Declaration of Kirstin Butler-Brzycki (f/k/a Kirstin Davis)

1.      At times relevant, I was a City of Decatur police officer. I currently am employed by the Illinois State Police.

2.      On June 26, 2020, just prior to 1652 hours, I was en route to a detail when I heard an unlawful use of weapons call go out for 1360 E Hickory St., Decatur, Illinois. At this time, I was driving eastbound on East Grand Ave. at or near its intersection with N Woodford St.

3.      As I heard dispatch broadcast that the suspect vehicle, a white Mazda passenger style car last traveling southbound on North Woodford St., being operated by a black male driver, I observed a white passenger car consistent with the body style of a Mazda turn westbound onto E Grand Ave. from north Woodford St. I was unable to see the registration on the white passenger car, however, I broadcast over the air that a white Mazda style passenger car was turning northbound from east grand Ave. onto North Lowber Street. I further relayed that this vehicle previously was traveling South on North Woodford St. as reported by the complainant on the UUW call.

4.      Shortly thereafter, I heard officer Macomb state over the air that he had eyes on the white passenger vehicle and was attempting to conduct a traffic stop at or near the intersection of North Lowber and E Walnut.

5.      Immediately thereafter I heard officer Macomb advise dispatch to send a backup officer to which I responded with my overhead lights and siren activated.

6.      Within seconds, I heard officer Macomb advise over the air that he had a person at gunpoint which I observed when I arrived immediately thereafter on scene to observe officer

1

Macomb standing at his driver's side door with his duty weapon drawn on the white vehicle, the same vehicle I had observed and reported.

7.      After arrival on scene, I approached the front of officer Macomb's passenger side with my duty gun drawn. Officer Macomb and I then conducted a high-risk traffic stop based on our reasonable suspicion that the driver possessed a firearm.

8.      During the high-risk traffic stop my duty weapon remained pointed at the vehicle.

9.      Officer Macomb directed the driver to exit the vehicle and walk backwards to the sound of his voice. Once the driver was away from the car, I conducted a pat down of the driver for weapons.

10.      I then placed the driver in double locking handcuffs and explained to the driver that the vehicle matched a physical description of a suspect vehicle in the area. The driver was detained in handcuffs pending identification and clearing of the vehicle.

11.      Promptly, officer Macomb verified there were no other occupants in the vehicle. I left the driver with Macomb to investigate the vehicle license plate and information in my car computer. I then determined that the vehicle was not a white Mazda and that the registration for the vehicle reported by the alleged victim bore South Carolina plates. I advised officer Macomb that the driver, Quartus Stitt, who had by then been identified, was not the suspect we were looking for and that he needed to be released from handcuffs. Immediately, Stitt was removed from handcuffs and released.

Pursuant to 28 U.S.C. Section 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed this 21st day of February 2024.


/s/ Kirstin Butler-Brzycki

Kirstin Butler-Brzycki


2